UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MURUPPEL GEORGE, | ) | Case No. 6:07-bk-06728-KSJ |
| MARY GEORGE, | ) | |
| | ) | Chapter 13 |
| Debtors. | ) | |
| | ) | |

MEMORANDUM OPINION GRANTING NATIONAL CITY BANK'S
MOTION FOR RECONSIDERATION AND (AGAIN) SUSTAINING
DEBTORS' OBJECTION TO NATIONAL CITY BANK'S CLAIM NO. 4-3

National City Bank (NCB) held a second mortgage on a home the debtors surrendered in their confirmed Chapter 13 plan. NCB knew of the debtors' intent to move from their home early in this case and filed Claim 4-2 conceding they were fully secured and seeking no payments for any unsecured, deficiency claim. The debtors have made substantial payments to their unsecured creditors in reliance on this claim. But, after the first mortgage holder on the home obtained a judgment foreclosing NCB's lien, and over a year after the proof of claim bar date and confirmation of the debtors' plan, NCB changed course and filed Claim 4-3 transforming the character of its debt from secured to unsecured, contending this belated claim "relates back" to its original claim. The debtors object arguing the claim is untimely. The Court agrees that Claim 4-3 was filed too late, does not relate back to NCB's original claim, and is disallowed.[1]

---

[1] The procedural history of this dispute is convoluted. NCB filed Claim 4-3 on May 13, 2009. The debtors timely objected arguing, initially, that the claim was unliquidated, not aware that a judgment foreclosing NCB's lien was entered six months earlier, on November 19, 2008 (Doc. No. 42). The objection provided NCB with 30 days to file a response. If no response was timely filed, the debtors' objection clearly stated that "the court will consider that you do not oppose the granting of the relief required in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested." NCB did not file a timely response. As such, the Court sustained the debtors' objection and disallowed NCB's Claim 4-3 (Doc. No. 43).
  NCB now seeks reconsideration of the order sustaining the debtors' objection because of NCB's failure to file a timely response arguing excusable neglect—the attorney simply failed to correctly calendar the response date (Doc. No. 46). At the hearing, held on November 3, 2009, the debtors stipulated to NCB's excusable neglect and the reconsideration of the underlying order. The Court therefore will grant NCB's motion.

The debtors filed this Chapter 13 case several years ago on December 21, 2007. On Schedule D, they listed NCB as a creditor with a secured claim of $101,218, holding a second mortgage on real property located in Ocoee, Florida (the "Property") (Doc. No. 1). SunTrust Mortgage held a first mortgage on the Property in the amount of $335,890. The debtors valued the Property at $450,000, which justified treating both the first and the second mortgage as fully secured.

Both mortgage holders knew on the first day this case was filed that the debtors did not intend to retain the Property subject to the respective mortgages of NCB & SunTrust. The debtors clearly indicated their intent to surrender the Property in Schedule D. The debtors' initial Chapter 13 Plan, filed on January 7, 2008, also indicated that they intended to surrender the Property (Doc. No. 9).

NCB has filed three claims in this case. First, on January 17, 2008, NCB filed the original Claim 4-1 as an "unsecured non-priority claim" of $102,047.35, attaching a copy of the mortgage encumbering the Property. On March 7, 2008, the Debtors objected (Doc. No. 26) to NCB's claim contending that the claim was secured by the Property and, therefore, did not qualify as an unsecured claim. In response, on March 28, 2008, NCB filed its second claim, Claim 4-2, as a fully secured claim in a slightly higher amount, $103,399.85, apparently agreeing with the debtors' position. On April 28, 2008, the Court sustained the debtors' objection (Doc. No. 33) and allowed NCB's amended Claim 4-2 as a secured claim that would receive no payments in the debtors' Chapter 13 plan (Doc. No. 9).

NCB was treated as a fully secured creditor at the confirmation of the debtors' Chapter 13 plan. NCB *never* objected to the confirmation of the debtors' plan. NCB also *never* indicated that it may later seek a deficiency, unsecured claim. If NCB *had* indicated at confirmation that it may

---

The parties also agreed that the Court should reach the merits of the debtors' objection without further evidence or hearing, and that the debtors could amend their objection to assert it was untimely. So, the only real issue before the Court is whether NCB's claim is timely or, instead, whether Claim 4-3 relates back to its original claim.

seek an unsecured, deficiency claim of over $100,000 sometime in the future, the Court would have delayed confirmation of the debtors' plan until the issue was resolved. Because NCB did not raise the issue, however, the Court confirmed the debtors' plan on March 13, 2008, and the debtors started making substantial, monthly payments to their unsecured creditors (Doc. No. 27).

The current dispute revolves around NCB's third claim, Claim 4-3, filed on May 13, 2009, over a year *after* the order confirming the debtors' Chapter 13 plan was entered and *after* the claim bar date of April 23, 2008. The third claim does not alter the amount due but rather transforms the nature of the debt from secured to unsecured.

Debtors contend Claim 4-3 is untimely. NCB argues that, because SunTrust foreclosed upon its first priority interest in the Property post-confirmation, NCB, as a second position mortgage holder, is entitled to have Claim 4-3 "relate back" in time to its original claim. The relevant facts are undisputed.

Before confirmation of the debtors' Chapter 13 plan, on February 22, 2008, SunTrust obtained relief from the automatic stay to file a foreclosure action against the Property (Doc. No. 23). SunTrust filed the expected foreclosure action naming both the debtors and NCB as defendants (Exhibit 3 to Doc. No. 46). The state court entered a final judgment of foreclosure in favor of SunTrust on November, 19, 2008. The Property was scheduled to be sold on January 8, 2009. NCB apparently did nothing to protect its second mortgage position and allowed SunTrust to proceed with the foreclosure sale. Later, NCB filed its amended Claim 4-3 contending they have an unsecured claim against the debtors. NCB essentially asserts it is entitled to a deficiency claim that arose after SunTrust's foreclosure action so that NCB can participate in distributions paid to the debtors' other unsecured creditors.

The debtors argue that Claim 4-3 is untimely. The claim was filed May 13, 2009, over one year after the bar date of April 23, 2008. Moreover, the claim was filed over a year after the debtors'

Chapter 13 plan was confirmed. The terms of the plan require the debtors to pay 100 percent of their unsecured debts. The debtors have faithfully and timely made the required payments since confirmation in March 2008 and ultimately will pay approximately $32,000 to their unsecured creditors. At this late date, the debtors contend that adding a claim of over $100,000 to the unsecured creditor body is unfair, prejudicial, and unmerited. If NCB's late Claim 4-3 were included, debtors necessarily would increase their plan payments by over $1,200 per month.

NCB, according to the debtors, had the ability at confirmation to reserve the right to file a future unsecured claim but took no action. NCB never objected to confirmation knowing that its claim was treated as fully secured. NCB even filed amended Claim 4-2 as a fully secured claim with full knowledge that SunTrust intended to foreclosure upon the Property and that the debtors intended to surrender the Property. NCB made no timely attempt to establish the value of the Property. NCB did not protect its junior interest in the foreclosure action. In essence, the debtors argue NCB never made any meaningful attempt to establish that NCB was or was not secured at any time in this case or in connection with the foreclosure action. As such, the debtors argue that it is inequitable to treat NCB as a belated unsecured creditor when NCB made no timely effort to assert an unsecured claim. The Court agrees.

As a general rule, Section 502(j) of the Bankruptcy Code (Section 101 of the United States Code, *et. seq*.) and Bankruptcy Rule 3008 allow bankruptcy courts to reconsider the allowance or disallowance of claims for "cause" according to the equities of the case. *In re Brooks*, 407 B.R. 429, 432 (Bankr.M.D.Fla.2009) ("by virtue of Section 502(j) of the Bankruptcy Code, an order allowing or disallowing a claim can be reconsidered for cause at any time as long as the case is open and pending); *In re Levoy*, 182 B.R. 827 (B.A.P. 9th Cir.1995) (There is no time limit for bringing motion to reconsider order allowing or disallowing claim). Courts should construe the ability to reconsider the allowance of claims liberally, however, the rules "must be applied in light of the

strong contrary policy of encouraging prompt, final dispositions of objections to proofs of claims." *In re Bicoastal Corp.,* 126 B.R. 613, 615 (Bankr.M.D.Fla.1991).

Moreover, amendment of claims is freely permitted early in a bankruptcy case to cure a defect in a claim as originally filed, to describe a claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim. *In re International Horizons, Inc.,* 751 F.2d 1213, 1216-1217 (11th Cir. 1985). However, "amendment is less appropriate with passing milestones in the case such as the claims bar date and plan confirmation."  *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993) "After confirmation, amendment to a claim should only be allowed for compelling reasons because . . . amendment post-confirmation . . . runs the risk of rendering the plan infeasible or altering the distribution to other creditors." *In re Winn-Dixie Stores, Inc.,* 414 B.R. 764, 769 (M.D. Fla. 2009).  "[T]he court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment." *In re International Horizons, Inc.,* 751 F.2d 1213, 1216-1217 (11th Cir. 1985) (citing *In the Matter of Commonwealth Corp.,* 617 F.2d 415, 420 (5th Cir.1980); *Wheeling Valley Coal Corp. v. Mead*, 171 F.2d 916, 920 (4th Cir.1949)).

At some point in every case, courts must insist on finality and refuse to allow creditors to continually amend claims. NCB made a decision to file a fully secured claim at the time the debtors confirmed their Chapter 13 plan.  NCB made no reservation for a possible future unsecured deficiency claim that could arise upon the conclusion of SunTrust's foreclosure action.  NCB made no effort to determine whether its claim was secured or unsecured until a year after the confirmation hearing and more than six months after SunTrust obtained its foreclosure judgment.  The debtors, acting in good faith, clearly expressed their intention to surrender the Property securing NCB's claim and relied upon NCB's secured claim in making substantial payments to their unsecured creditors for many months under the confirmed plan.

NCB now would like to change its mind and receive payments as an unsecured creditor. Unfortunately, it is too late in this case. The plan, treating NCB as a fully secured creditor, was confirmed in March 2008. To change that characterization at this juncture would cause substantial prejudice to the debtors and to their unsecured creditors. NCB had the opportunity to establish it was or was not secured, but NCB failed to timely act. Therefore, when SunTrust has long since foreclosed upon the Property and when the debtors already have surrendered the Property, exactly as anticipated at confirmation, NCB cannot now at this late date expect a different result by filing a belated deficiency unsecured claim. NCB failed to timely file an unsecured claim.

NCB argues that its untimely second amended unsecured Claim 4-3 is not a new claim but, instead, "relates back" to its original Claim 4-1 which was timely filed on January 17, 2008. Courts consider five equitable factors in determining whether a late filed claim will "relate back" as an amendment to a timely, earlier filed claim: (1) whether the debtor and creditors relied on the earlier proof of claim or had reason to know that a subsequent proof of claim would be filed; (2) whether other creditors would receive a windfall if the court refused to allow amendment; (3) whether the claimant intentionally or negligently delayed in filing the amendment; (4) the justification for the failure to file for an extension to the bar date; and (5) whether other equitable considerations exist that compel amendment. *In re Matthews*, 313 B.R. 489, 494 (Bankr.M.D.Fla.2004) (citing *In re Int'l Horizons, Inc.*, 751 F.2d at 1216 (other citations omitted)).

In *In re Hibble,* 371 B.R. 730 (Bankr. E.D. Pa. 2007), the bankruptcy court denied as untimely a creditor's attempt to amend a claim filed in the debtor's Chapter 13 case where the creditor initially timely filed a secured claim but failed to reserve the right to file a deficiency claim if circumstances later changed. The *Hibble* court found the creditor's claim particularly untimely in light of the fact that the creditor's original proof of claim acknowledged it was undersecured by approximately $10,000. Ultimately, the creditor obtained relief from stay, recovered its collateral (a

car), sold it at a loss, and attempted to amend its secured claim to assert an unsecured claim for the remaining deficiency balance. The court concluded that the amended claim did not relate back to the original claim because the amended claim "asserts an entirely new matter: it is for a deficiency resulting from disposition of collateral. This change is highly significant. Unlike secured creditors, unsecured creditors must file claims in Chapter 13 to receive payment." *Id.* at 737-38 (*citing* Bankruptcy Rule 3002(a)).

A similar result was reached in *In re McBride*, 337 B.R. 451 (Bankr. N.D.N.Y. 2006), where the creditor initially filed a secured claim and later sold its collateral post-confirmation at a loss. Because the creditor had not reserved the right to file a deficiency claim upon the sale of its collateral (again a car), the court determined that the creditor's subsequent untimely unsecured deficiency claim was not allowable as an amended claim because the creditor had not provided timely notice that it would seek payment on a deficiency claim.  Likewise, in the very well reasoned *Matthews* opinion, the bankruptcy court, for similar reasons and on similar facts as those in *Hibble* and *McBride*, concluded that an untimely deficiency claim did not relate back to the original secured claim. *Matthews,* 313 B.R. at 494. The bankruptcy court explained:

> If the secured creditor wants to receive something more than its collateral value-a distribution on a deficiency under a confirmed plan-it must timely file either an unsecured proof of claim or a secured claim with a clear reservation of the right to file a deficiency claim.

*Id*. (citing *In re Bateman*, 331 F.3d 821, 827 (11th Cir.2003)).

NCB attempts to distinguish these cases limiting the relation back doctrine relying upon two recent decisions:  *In re Winters*, 380 B.R. 855 (Bankr M.D. Fla. 2007) and *Brooks,* 407 B.R. at 429.  In *Winters*, the bankruptcy court permitted a creditor, post-confirmation, to relate a claim it filed after the claims bar date back to a timely filed claim where the creditor included both secured and unsecured components in its original claim, and where the original claim clearly and

expressly reserved the right to seek a deficiency claim in the event its collateral were sold at a loss. Here, NCB took neither of these actions.

In *Brooks*, the bankruptcy court also allowed an untimely claim to relate back to a timely filed claim where the creditor promptly objected to language in the debtors' proposed Chapter 13 plan that provided for surrender of real property securing creditor's claim in full satisfaction of the debt. The creditor provided ample notice of its intent to seek an unsecured deficiency judgment in the future, after its collateral was sold, even though it did not file a bifurcated claim or expressly reserve the right to file a deficiency claim. In upholding the creditor's right to an unsecured claim, the bankruptcy court took a moment to provide guidance to creditors:

> As a general proposition, the prudent approach for a secured creditor who is uncertain of a deficiency should file a bifurcated claim composed of a secured and unsecured portion or, in the alternative, the creditor should file a motion to value the collateral and obtain an order determining the amount of deficiency based on Section 506(a) of the Code.

*Id*. at 433. Here, NCB took none of these actions.

Rather than support NCB's position, the courts' decisions in *Winters* and *Brooks* are entirely consistent with *Hibble*, *McBride*, and *Matthews*. In each case, creditors were required to take some affirmative action prior to confirmation of a Chapter 13 plan to provide clear notice to the debtor that it may seek a future unsecured deficiency claim. Creditors could timely file a bifurcated claim that preserves the creditor's right to seek a future deficiency claim. They could seek to value their collateral. Or they could object to provisions in confirmation orders finding that the debtor's surrender of their collateral was in full satisfaction of the debt. The key is that the creditor must take some action to indicate that it intends to pursue a future deficiency claim by the date of the final confirmation hearing. If it fails to do so, as NCB did here, a creditor cannot later surprise a debtor with a deficiency request.

Considering each of the factors relevant to the relation back doctrine, NCB is not entitled to relate its recently filed unsecured Claim 4-3 back to its prior secured Claim 4-2. The debtors and the other creditors in this case relied on the earlier secured claim and had no reason to know NCB would file a later unsecured claim. No windfall will occur because each of the debtors' unsecured creditors merely are receiving appropriate payments for their legitimate claims.

Under the circumstances, awarding NCB an unsecured claim for over $100,000, on the other hand, would result in a windfall. NCB could have taken some timely action to put parties on notice of this possible unsecured claim at confirmation. NCB could have filed a bifurcated claim, could have valued its collateral, or could have otherwise let others know of its intention to seek an unsecured claim. It did not and now cannot expect to participate in the same distributions as other unsecured creditors. NCB has failed to offer any valid justification for its dilatory behavior. No other equitable considerations exist that would support allowing NCB to rely on the relation back doctrine.

NCB's motion for reconsideration is granted. Although the prior order sustaining the debtors' objection is vacated, the Court will enter a second order again sustaining the debtors' objection to NCB's Claim 4-3, however, this time NCB was given a full opportunity to argue the merits of its position, and the decision is reached on the merits (Doc. No. 42). The Court holds that Claim 4-3 is untimely and does not relate back to NCB's timely filed claim. Claim 4-3 is disallowed. A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on April 1, 2010.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtors:  Muruppel George and Mary George, 1826 Black Lake Blvd., Winter Garden, FL 34787

Debtors' Attorney:  K. Hunter Goff, 1215 East Livingston Street, Orlando, FL  32803

Chapter 13 Trustee: Laurie K. Weatherford, P.O. Box 3450, Winter Park, FL  32790

Creditor's Attorney:  Thomasina F. Moore, 9204 King Palm Drive, Tampa, FL  33619-1328

National City Bank, Attn: Therese Green, PO Box 94982, Cleveland, OH  44101

National City, Attn: Bankruptcy Manager, 6750 Miller Road, Brecksville, OH  44141